IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 20, 2019

## TOMMY LEE HOUSER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 113162     Steven W. Sword, Judge**

---

### No. E2019-00210-CCA-R3-PC

---

The petitioner, Tommy Lee Houser, appeals the denial of his petition for post-conviction relief, which petition challenged his conviction of theft of property valued at $1,000 or more but less than $10,000, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Gully, Jr., Knoxville, Tennessee, for the appellant, Tommy Lee Houser.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Charme Allen, District Attorney General; and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Knox County Grand Jury charged the petitioner with one count each of theft of property valued at $1,000 or more but less than $10,000 and vandalism of property valued at $1,000 or more but less than $10,000. *State v. Tommy Lee Houser, Jr.*, No. E2017-00987-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Knoxville, Nov. 1, 2017). This court summarized the evidence adduced at trial:

> [T]he [petitioner] visited Manis Motors car lot on January 20, 2017, and expressed an interest in purchasing a teal-green Ford Ranger truck, valued at $1,600 to $1,800. Later that night, the same Ford Ranger truck was taken, without permission, from Manis Motors and found in the

[petitioner's] possession at nearby Lonsdale Market. While at the market, the [petitioner] told Ms. [Wilma] Jones that the truck was "his" and that he planned to buy it. The [petitioner] started the truck and invited Ms. Jones to "ride with him" to Merchant's.

*Id.*, slip op. at 6. The jury convicted the petitioner of the theft charge but acquitted him of the vandalism charge. *Id.*, slip op. at 4. Determining the petitioner to be a Career Offender, the trial court imposed a sentence of 12-years' incarceration. *Id.* This court affirmed the petitioner's conviction on direct appeal. *Id.*, slip op. at 1.

The petitioner timely filed a pro se petition for post-conviction relief alleging the ineffective assistance of counsel and prosecutorial misconduct. After the appointment of counsel, the petitioner received an evidentiary hearing.

At the January 10, 2019 hearing, the petitioner testified that he was represented by trial counsel for the duration of his case. The petitioner stated that State witness Richard Williams lied at trial and that there were discrepancies between Mr. Williams' trial testimony and his previous testimony at a pretrial hearing. As an illustration, the petitioner said that, at the pretrial hearing, Mr. Williams testified that the petitioner had come to the car lot two weeks prior to the theft of the truck, but at trial, Mr. Williams testified that the petitioner had come to the car lot on the day of the theft. The petitioner speculated that Mr. Williams had learned that the petitioner had been incarcerated in the weeks preceding the robbery and changed his testimony at trial in an effort "to clean up his tale from [the] preliminary hearing." The petitioner said that he was surprised that Mr. Williams testified at trial because "he wasn't even subpoenaed to be in court that day." Trial counsel did not challenge the State's calling Mr. Williams at trial and told the petitioner, "They're allowed to do that." The petitioner asserted that trial counsel's cross-examination of Mr. Williams was inadequate because "he let him lie and let him walk away and not attack that tale that he was telling." The petitioner contended that had trial counsel impeached Mr. Williams "more aggressively" about his inconsistent statements and his "lying on the stand," "his testimony would have been discredited before the jury."

The petitioner stated that he met with trial counsel twice before his trial. During these two meetings, counsel "went over [the petitioner's] prior record somewhat and point[ed] out some felonies and conviction dates" and "just talked . . . about the case in general." The petitioner was aware that counsel had talked to Wilma Jones and had received a partial police video recording in discovery materials. The petitioner stated that counsel did not visit the crime scene, and the petitioner was unaware of any defense

strategy, saying, "I don't know of any strategy at all that was discussed." The petitioner explained that he identified to trial counsel "who the actual operator of the truck was," but counsel did not follow up on this information. Although the petitioner identified to counsel certain alibi witnesses who could testify that the petitioner was at the Lonsdale Market at the time of the offense and discussed with him "the possibility of video surveillance" from the store, counsel failed to follow up on that information. The petitioner contended that counsel did not call any character witness, nor did he call any witness who had been at the Lonsdale Market at the time of the offense.

The petitioner stated that he was incarcerated from December 26 to January 20, the day of the theft. Upon his release from the detention facility on January 20, the petitioner "was dropped off downtown" near the City-County building at approximately 5:30 p.m., and the petitioner went directly to the Lonsdale area and "didn't leave the Lonsdale area at no time." The petitioner said that he gave this information to trial counsel. The petitioner acknowledged that counsel called "a bondsman and the court clerk" as witnesses to "show[] that Mr. Williams was lying" and that the petitioner was incarcerated up until the day of the offense.

The petitioner said that trial counsel moved for a new trial, raising several grounds for relief but failing to raise "the main one." Appellate counsel "gave [the petitioner] the understanding" he could not raise certain issues on appeal because trial counsel had failed to "properly raise[ them] during . . . trial."

During cross-examination, the petitioner stated that he had asked trial counsel to interview Knoxville Police Department officer Brian Mason and Maurice McDowell, the owner of the Lonsdale Market, along with other store employees, but counsel did not interview these witnesses. The petitioner contended that Officer Mason lied in his testimony when he said that the store's surveillance camera was broken and that Mr. McDowell would have been able to rebut that statement. The petitioner also said that Mr. McDowell and the other store employees would have testified that the petitioner was at the Lonsdale Market during the offense and did not steal the truck. The petitioner conceded that none of these witnesses were present at the evidentiary hearing.

The petitioner maintained that he did not receive notice that the State intended to call Mr. Williams at trial and for that reason, Mr. Williams should not have been allowed to testify. The petitioner identified a man he knew only as "Toby" as the person who drove the truck to the Lonsdale Market. Toby and the petitioner "engaged in conversation," and Toby drove the petitioner to Ms. Jones's house and back to the market. The petitioner asked Toby if he would be interested in selling him the truck and Toby said "[m]aybe." Toby then got into a different vehicle and left. The petitioner told

Ms. Jones that he was considering buying the truck "when that man gets back." Ms. Jones cautioned the petitioner that the truck may be stolen and called the police to inquire about it.

On redirect examination, the petitioner asserted that if the jury had been presented with a transcript of Mr. Williams' preliminary hearing testimony, "he would have been proven to be a liar," and "it would have made a lot of difference."

Trial counsel testified that he met with the petitioner "eight to 10 times" leading up to the petitioner's trial. Ms. Jones accompanied the petitioner to some of these meetings. Trial counsel said that he did not use the service of a private investigator in this case because "the facts and everything . . . were pretty much laid out there for us" and because he was familiar with the location. Counsel acknowledged that he did not interview Mr. McDowell despite knowing his connection to this case because Mr. McDowell "had some legal difficulties of [his] own going on." Counsel explained that he did not seek to interview any other potential witnesses from the Lonsdale Market because the petitioner did not identify anyone to him.

Trial counsel described his defense strategy: "[The petitioner] maintained all along that there was somebody else . . . who had d[one] all these things. So a key for us was trying to get Ms. Wilma Jones to identify . . . where [the petitioner] was seated in the vehicle and whether or not that could have been the other person." Counsel stated that he could not identify the other person. Counsel said that he asked the State about surveillance cameras at the Lonsdale Market, but he was told that there was no video recording. Counsel did not look into the matter further.

Trial counsel explained that he called the court clerk to testify to the time that the petitioner was released from custody on January 20 and that he called the bondsman to testify to the time it takes for a person to actually be released after posting bond in an effort to rebut Mr. Williams' timeline of events. Counsel said that it was a strategic decision not to recall Mr. Williams to challenge his inconsistent timeline, stating, "[W]hy give them another chance to try to correct that . . . maybe it's best not to give them a chance to close that door."

Trial counsel spoke with Officer Mason before the preliminary hearing; however, counsel explained that he was not trying to determine Officer Mason's credibility. Rather, he was "more concerned about what he observed that night and how he's able to relate that back both to me personally and in front of a jury or in front of the judge."

-4-

Trial counsel acknowledged that Mr. Williams was not included on the State's witness list for trial, but because counsel "knew about his prior testimony" at the preliminary hearing, Mr. Williams' "being called wasn't a surprise or a shock at trial." Counsel agreed that Mr. Williams' trial testimony differed from his prior testimony, and counsel acknowledged that he did not play any portion of Mr. Williams' prior testimony for the jury. Counsel said that he did, however, include the issue in the motion for new trial.

During cross-examination, counsel said that the petitioner repeatedly asserted that another person drove the truck to the Lonsdale Market, but because the petitioner could not provide any other information about the person, counsel was never able to identify him. Counsel reiterated his defense strategy as trying to show that the petitioner was "not in possession of that truck."

On redirect examination, trial counsel agreed that "there were some differences" between Mr. Williams' preliminary hearing testimony and his trial testimony, and counsel said that he "tried to bring out what we could."

In its written order denying post-conviction relief, the post-conviction court accredited trial counsel's testimony as to the number of times counsel met with the petitioner pretrial. The court found that counsel had "attempted to investigate every lead provided to him by the [p]etitioner," including "looking for a 'mystery man' that the [p]etitioner told him drove the truck." The court further found that counsel interviewed Officer Mason "at the preliminary hearing stage," and he did not interview Mr. McDowell because "Mr. McDowell was under federal indictment at the time and [trial counsel] did not think Mr. McDowell would be able to remember the night in question." Finally, the court found that trial counsel was not surprised by Mr. Williams' testifying at trial and "was able to attack the credibility of Mr. Williams by impeaching him with prior inconsistent testimony."

On these facts, the post-conviction court concluded that the petitioner failed to show that Officer Mason gave false testimony or that counsel could have discovered additional information with additional interviews. Additionally, the court concluded that the petitioner failed to establish what favorable evidence Mr. McDowell or any other unnamed witness would have given if counsel had called them to testify at trial. As to the petitioner's claim that counsel failed to adequately investigate the case, the post-conviction court concluded that trial counsel "investigated the case as thoroughly as possible given the limitations of the information provided in the case," and "[h]e presented witnesses in support of a cohesive strategy for defending the case."

In this timely appeal, the petitioner argues that trial counsel performed deficiently by failing to adequately cross-examine Mr. Williams, failing to call certain witnesses, and failing to adequately investigate the case.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.

1994).  Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case.  *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record fully supports the denial of post-conviction relief in this case.  We note that the trial transcript is not included in the record on appeal.  The petitioner, as the appellant, bore the burden to prepare an adequate record for appellate review, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), and, in the absence of an adequate record, this court must presume the trial court's ruling was correct, *see State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993).  Because we must presume as correct the post-conviction court's finding that counsel impeached Mr. Williams with his prior inconsistent testimony, the petitioner's claim that counsel failed to do so is without merit.

Furthermore, the petitioner has failed to present any witness whose testimony he claims would have benefited his defense at trial.  *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.").  Similarly, the petitioner has failed to present any evidence that counsel could have discovered with further investigation, and, consequently, he cannot establish that he was prejudiced by counsel's conduct.  *See id.*

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE